# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 16-1413V
Filed: February 4, 2019

| | |
|---|---|
| MELINDA MIDDLEBROOKS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Processing Unit (SPU);<br>Motion for Finding of Fact; Findings of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Daniel Anthony Principato, U.S. Department of Justice, Washington, DC, for respondent.*

### FINDING OF FACT [1] AND SCHEDULING ORDER– SPECIAL PROCESSING UNIT

**Dorsey**, Chief Special Master:

On October 27, 2016, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury caused by a September 15, 2015 influenza ("flu") vaccination. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent now moves for a factual ruling with respect to the onset of petitioner's left shoulder symptoms. ECF No. 43 at 8. For the reasons discussed

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. This means the ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

below, the undersigned finds petitioner received a flu vaccination in her left deltoid on September 15, 2015, and that the onset of petitioner's left shoulder injury was within 48 hours of her September 15, 2015 flu vaccination.

## I. Procedural History

Following the filing of the October 27, 2016 petition, petitioner submitted medical records, an affidavit, and a Statement of Completion on November 7, 2016. ECF No. 7, 8.

Respondent stated in a status report on February 22, 2017, that he was willing to receive a reasonable settlement demand. ECF No. 12. Petitioner reported a comprehensive demand was forwarded to respondent on March 27, 2017. ECF No. 14. On May 26, 2017, petitioner stated that the settlement negotiations were at an impasse and the parties' agreed to a status conference with the undersigned after updated medical records were obtained and filed. ECF No. 21. Petitioner filed additional medical records and an amended statement of completion on September 13, 2017. ECF Nos. 22, 25, 27.

On October 25, 2017, the parties had a status conference to discuss the status of the settlement discussions. ECF No. 28. Petitioner's counsel argued that, based on updated medical records, this case involves a SIRVA with ongoing complications. Respondent argued that the updated records indicate petitioner suffered from radiculopathy, not a SIRVA, and disputed that the onset of petitioner's injury was within 48 hours of the vaccination. *Id.* The undersigned set forth a preliminary finding that, based on the totality of the medical records, the preponderant evidence shows petitioner's injury is consistent with a SIRVA. *Id.* at 1-2. Petitioner was then ordered to file any outstanding medical records, and respondent was ordered to file a Rule 4(c) Report thereafter.

Between November 27, 2017 and December 5, 2017, petitioner filed four affidavits and additional medical records in support of her petition. ECF Nos. 29-35. On January 19, 2018, respondent filed Respondent's Rule 4(c) Report ("Respondent's Report") stating that compensation is not appropriate in this case, based in part on his conclusion that petitioner did not complain of shoulder pain until six weeks after she received the September 15, 2015 flu vaccination. Respondent's Report at 8. Respondent also argued that petitioner exhibited radiculopathy, which would explain her symptoms. *Id.* at 9.

Petitioner was ordered to file an expert report supporting her claim. Following an unopposed request for a 60 day enlargement of time (*see* ECF No. 39), petitioner filed an expert report on May 17, 2018. ECF No. 40. Respondent stated in a status report on June 18, 2018, that he intended to file a responsive expert report. ECF No. 41. Following a request for an unopposed motion for an enlargement of time, respondent's report was due by October 1, 2018. See ECF No. 42.

On September 24, 2018, respondent filed a Motion for a Factual Ruling, wherein respondent requested the undersigned make a factual ruling with respect to the onset of petitioner's left shoulder symptoms. ECF No. 43. Respondent also requested that,

2

because a finding of onset is necessary for a proper evaluation of this case by an expert, respondent's deadline to file an expert report be suspended. *Id.* at 8 n.3.

Petitioner filed a response on September 26, 2018, requesting that respondent's motion be denied. ECF No. 44.

On November 7, 2018, the parties had a status conference to discuss how they intended to proceed. ECF No. 45. The parties agreed to suspend the deadline for respondent's expert report and pursue a ruling on the record with regard to onset. Petitioner also agreed to submit additional evidence regarding the date of her injury, and filed a supplemental affidavit on November 8, 2018.

## II. Factual History

### a. Petitioner's Medical Records

Petitioner received an influenza ("flu") vaccination on September 15, 2015 in her left deltoid. Ex. 1. Prior to September 15, 2015, petitioner had no history of left shoulder pain.

On October 29, 2015, petitioner sought medical care from Dr. Abraham Goodgold for her left shoulder pain. Ex. 2 at 3, 4. Petitioner reported that "[o]n September 15, 2015 [she] received her flu shot, on the left deltoid" and "the site of injection is painful traveling all the way to her shoulder." *Id.* at 3. Upon examination, petitioner's shoulder movements were restricted and painful with flexon. *Id.* at 4. Petitioner was diagnosed with unspecified myositis. *Id.*

Petitioner had a follow-up appointment with Dr. David Schreck for left shoulder pain on November 5, 2015, when she was diagnosed with shoulder bursitis and tendonitis of her left shoulder. Ex. 3 at 5, 13. Dr. Schreck noted that "patient originally felt that this could be related to a flu shot injection that was given to her in the area 2 months ago." *Id.* at 5. Petitioner's doctor noted "[i]t is unclear to me whether this injury is due to a flu shot…" but also noted that there were no signs of neurologic deficits. *Id.* An x-ray revealed calcific deposits at the acromial region. *Id.* Petitioner was diagnosed with bursitis of the left shoulder and calcific tendinitis. *Id.*

On November 9, 2015, petitioner again reported left shoulder pain that was localized anteriorly and occasionally radiated down into the upper arm. Ex. 3 at 2. Upon exam, petitioner's left shoulder was positive for Neer and Hawkins impingement sign, and a tender anterolateral acromion and AC joint. *Id.* at 3. Petitioner received an injection into her shoulder of depomedrol and zylocaine. *Id.* At that time, petitioner was diagnosed with left shoulder impingement syndrome. *Id.* at 3.

Petitioner was seen by Dr. David Wang, a physician at the Primary Care Sports Medicine Hospital for Special Surgery, for an initial consultation due to left shoulder pain on March 3, 2016. Ex. 5 at 11. Dr. Wang noted that petitioner "reported symptoms

began on September 15, 2015.  She had her flu shot and she noted immediate burning pain and severe discomfort…." *Id.*

Petitioner underwent an MRI on March 4, 2016.  Ex. 4 at 5.  The MRI stated that petitioner had "[s]evere left shoulder pain and decreased range of motion since September 2015" and that the onset occurred "after flu vaccine in the area." *Id.* at 5.  The MRI showed rotator cuff tendinosis, adhesive capsulitis, and a torn labrum.  Ex. 4 at 5, 6; Ex. 5 at 11.

On March 11, 2016, petitioner was seen again by Dr. Wang for left shoulder pain that she reported "began in September after a flu vaccine."  Ex. 5 at 7.  Petitioner's physician stated in the assessment that "[g]iven onset immediately after flu vaccine, suspicious for local reaction.  Given her lack of range of motion, pain, prior history of frozen shoulder on opposite side, and MRI findings, suspect adhesive capsulitis." *Id.* 5 at 8.

On March 23, 2016, petitioner was assessed by a physical therapist for continued left shoulder pain and adhesive capsulitis.  The physical therapy records report "onset of L[eft] shoulder pain after a flu shot in September."  Ex. 4 at 1.  The date of injury was recorded as 9/23/2015. *Id.*  Petitioner was discharged from physical therapy on June 9, 2016 after achieving most of her short term and long term goals. *Id.* at 26.

Petitioner was seen for a follow-up for left shoulder pain again on May 13, 2016.  The records state that her shoulder pain and adhesive capsulitis "developed after a flu vaccine in September 2015."  Ex. 5 at 15.  Petitioner also stated that "over time she's had complete resolution in symptoms." *Id.* at 15, 17.

On December 16, 2016, petitioner was seen again for left shoulder pain that "began about 1 year ago after a flu shot."  Ex. 7 at 1.  Petitioner was assessed with adhesive capsulitis of the left shoulder.  Petitioner was also referred for a neurological consultation.

Petitioner was seen for left arm pain again on April 28, 2017.  She presented with "c/o pain to left arm s/p influenza injection 9/15/15."  Ex. 8 at 1.

On May 22, 2017, petitioner saw Dr. Teena Sheetty, MD, for evaluation of left arm pain and numbness.  Ex. 9 at 1.  Petitioner reported that she received a flu shot on September 15, 2015 and immediately felt a shooting pain that wrapped around the back of her shoulder. *Id.*  Petitioner was diagnosed with left brachial plexopathy, intrinsic left shoulder mechanical issues including adhesive capsulitis, labral tear, and rotator cuff tendinosis.  Dr. Sheetty also stated the chronology of pain followed by weakness is "most typical of Parsonage Turner syndrome." *Id.* at 4.

An MRI on May 30, 2017 showed no evidence of a plexitis or regional denervation effect.  Ex. 10 at 1.  An EMG and nerve conduction study on June 5, 2017

4

was normal with no evidence of brachial plexopathy, axillary neuropathy, or radiculopathy. Ex. 9 at 5.

On July 6, 2017, petitioner was seen again for left arm pain and numbness. At that time, petitioner reported that "on 9/15/15, after receiving a flu shot in the left arm at CVS, she immediately developed a shooting pain that radiated around the back of the left shoulder." Ex. 11 at 5.

Petitioner was seen by Dr. Wang on August 11, 2017, for continued shoulder pain that began "about 2 years after a flu shot. Ex. 13 at 1. Petitioner reported that pain "does not radiate down the arm, but she feels a tingling/numbness down the arm, over the volar forearm and into the hand." *Id.* Another MRI was conducted at that time. *Id.* at 6.

On August 31, 2017, petitioner was seen by Dr. Semih Gungor for pain management. Ex. 14 at 1. Petitioner complained of left shoulder pain, arm and forearm pain that started after a flu shot on September 15, 2015. *Id.* Prior to this, petitioner did not complain of any pain in the left shoulder or upper extremity, but after the injection she "reported pain in the left shoulder at the injection site that spread to entire shoulder, as well as spreading to the left side of the neck and to the inside of the left upper extremity, along with tingling sensation." *Id.* Additional MRI and x-rays were ordered, and petitioner had an MRI of her cervical spine on August 31, 2017. Ex. No. 20 at 2. The MRI showed spinal stenosis. *Id.* September 7, 2017, she was diagnosed with cervical radiculopathy. Ex. 14 at 11.

### b. Petitioner's Affidavit Evidence

In support of her petition, petitioner submitted five affidavits: Petitioner's Affidavit (Ex. 6), Affidavit of Jessica Middlebrooks Minneci (Ex. 15), Affidavit of Joseph Middlebrooks Shapiro (Ex. 16), Affidavit of Rudolph Anthony Moni (Ex. 17), Affidavit of Mary Jo Middlebrooks (Ex. 18), and a supplemental affidavit on November 8, 2018 (Ex. 25).

In her affidavit, petitioner stated that at the time of vaccination on September 15, 2015, she informed the administrator that the injection site was very painful, and was told that the pain would ultimately go away. Ex. 6 at 1. However, according to petitioner, the pain became progressively worse. *Id.* Petitioner does not indicate why she delayed in seeking treatment until October 29, 2015.

Jessica Middlebrooks Minneci, petitioner's youngest child, also submitted an affidavit in this case. Ms. Minneci stated that she is an associate at the law firm of Middlebrooks Shapiro, P.C., where petitioner is the managing partner. Ex. 15 at 1. Ms. Minneci stated that petitioner and petitioner's son, Joseph Middlebrooks Shapiro, received a flu vaccination and told her "that the pain they both experienced was severe and unbearable." Ex. 15 at 2. Ms. Minneci also stated that, during the week of September 15 both petitioner and Mr. Shapiro stated the pain had not subsided but "was getting progressively worse." *Id.*

5

Joseph Middlebrooks Shapiro, petitioner's oldest child, submitted an affidavit in this case. Ex. 16. Mr. Shapiro stated that he and petitioner received a flu vaccination on September 15, 2015. *Id.* at 2. Immediately following the vaccinations, both Mr. Shapiro and petitioner "were in immediate pain." *Id.* During the week of September 15, 2015, Mr. Shapiro stated that both he and petitioner "realized that the pain was not subsiding, but rather that it was intensifying and getting progressively worse." *Id.*

Mr. Rudolph Anthony Moni, petitioner's husband, submitted an affidavit in this case. Ex. 17. Mr. Moni stated "when [petitioner] received her flu vaccination on September 15, 2015, she instantly became unable to use her left arm without great pain." *Id.* at 1-2. Mr. Moni further stated that he also received a flu vaccination on September 15, 2015, and that both petitioner and Mr. Shapiro told him "the pain they both experienced was severe and unbearable." *Id.* at 3.

Mary Jo Middlebrooks, petitioner's sister, submitted an affidavit in this case. Ex. 18. Ms. Middlebrooks stated that petitioner called her "immediately after receiving the flu vaccination and told [her] that the pain she experienced was severe and unbearable." *Id.* at 2. In addition, during the week of September 15, Ms. Middlebrooks stated that she spoke with petitioner several times, and that petitioner told her the pain had not subsided but "had intensified and was getting progressively worse." *Id.* at 2.

Petitioner's supplemental affidavit addressed the discrepancy in the record regarding the onset of her injury. Petitioner stated that she underwent an initial physical therapy evaluation on March 23, 2016, and "recently became aware that the record of that day's visit indicates an 'Injury/Onset Change of Status Date' as '9/23/2015….'" Ex. 25. Petitioner is not aware how the date of her injury was assessed in that record, and cannot account for this error. *Id.*

### c. Expert Report

In addition to medical records, petitioner submitted an expert report of Dr. Clifford Colwell, Jr. Ex. 22. Dr. Colwell is a board certified orthopedic surgeon with extensive experience in diagnosing and treating shoulder injuries. See Ex. 23 at 1 (Curriculum Vitae of Dr. Marko Bodor).

Dr. Colwell reviewed the medical records submitted in this case. Ex. 22 at 1. According to Dr. Colwell, "it is [his] expert opinion…that [petitioner] meets the defined definitions of SIRVA, as outlined by The Vaccine Injury Compensation Program (VICP)…." *Id.* at 1. In support of this conclusion, Dr. Colwell states that there is no indication that petitioner had any previous history of left shoulder pain, inflammation, or dysfunction prior to petitioner's September 15, 2015 vaccination. *Id.* Further, "[a]ll of [petitioner's] symptoms indicated that her pain occurred within the specified time frame outlined in the requirements." *Id.* Petitioner's "reduced range of motion was limited to the shoulder in which the intramuscular vaccine was given." *Id.*

Dr. Colwell also addressed the reference to cervical radiculopathy in petitioner's exhibit 18. According to Dr. Colwell, there is no mention of this potential diagnosis in exhibits 1-17, her EMG and conduction velocities were normal, and all her treatments were centered on a localized shoulder pathology. *Id.* at 2. Dr. Colwell further stated that

> Many patients in this age category carry a diagnosis of cervical radiculopathy due to degenerative arthritis in the cervical spine which is unrelated to other diagnoses that the patient may have. It would be highly unlikely that cervical radiculopathy would manifest itself at exactly the same time as the influenza vaccine was given. In addition, the report in exhibit 18 did not exclude a diagnosis of SIRVA.

*Id.* at 2.

### III.     Parties' Contentions

Respondent requests that the Chief Special Master make a factual ruling with respect to the onset of petitioner's left shoulder symptoms to resolve ambiguous and inconsistent medical records. Motion for A Factual Ruling ("Respondent's Motion") at 8. Respondent argues the record does not establish the onset of petitioner's injury within 48 hours of the vaccination. *Id.* Respondent stresses that the first three post-vaccination medical visits referenced the vaccination, but only spoke in non-specific terms. Therefore, according to respondent, the record only establishes that petitioner's symptoms began sometime between the vaccination on September 15, 2015 and when she first sought medical care on October 29, 2015. *Id.* Respondent further requested that his deadline to file an expert report be suspended as a factual finding may obviate the need for an expert report regarding entitlement. *Id.* at 8 n.3.

Petitioner's response opposes respondent's request as untimely. Petitioner's Response to Respondent's Motion for a Factual Ruling ("Petitioner's Response") at 1, 3. Petitioner notes that respondent was initially ordered to file an expert report in January of 2018. *Id.* at 3. Further, petitioner notes that respondent set forth two grounds for why compensation should be denied, and Respondent's Motion only addresses one of them.[3] *Id.* at 1.

---

[3] Respondent argued in his Rule 4(c) report that entitlement should be denied in this case because petitioner's symptoms did not occur within 48 hours and that petitioner showed signs of radiculopathy and symptoms not associated with a SIRVA. Although this case was filed before SIRVA was added to the Vaccine Injury Table, the Vaccine Act is instructive. The Vaccine Act states: "The special master or court may find the first symptom or manifestation of onset…described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." § 300aa-13(b)(2).

7

### IV.     Finding of Fact

The issue before the undersigned is whether the onset of petitioner's condition was within 48 hours of the vaccination implicated by petitioner's claim. Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a "preponderance of the evidence." § 300aa-12(a)(1)(A). Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring). In light of all of the above record evidence and for the reasons described below, the undersigned finds that there is preponderant evidence that the onset of petitioner's alleged shoulder pain occurred within 48 hours of petitioner's September 15, 2015 flu vaccination.

As described above, petitioner's medical records demonstrate that petitioner repeatedly and consistently linked her injury to her flu vaccination. The first time petitioner sought medical treatment for her injury on October 29, 2015, Dr. Goodgold's notes state "[o]n September 15, 2015, patient received her flu shot, on the left deltoid…. Patient states that the site of injection is painful…. Patient states her range of motion is limited because of the pain." Ex. 2 at 3. Petitioner further linked the onset of her injury to her vaccination on November 5, 2015, when she stated to Dr. Schreck that her injury "could be related to a flu shot injection that was given to her in the area 2 months ago." Ex. 3 at 5.

Moreover, petitioner definitively linked the onset of her injury to the flu vaccination in an explicit fashion on March 4, 2016, when she reported to Dr. Wang that her "symptoms began on September 15, 2015. She had her flu shot and she noted immediate burning pain and severe discomfort…." Ex. 5 at 11. Additional records provide further corroboration. For example, on March 4, 2016, petitioner reported severe left shoulder pain and decreased range of motion "since September 2015" and that these symptoms occurred "after flu vaccine…." Ex. 4 at 5. On March 11, 2016, Dr. Wang, also noted that the onset of petitioner's left shoulder pain was "immediately after flu vaccine…." Ex. 5 at 8. See also Ex. 9 at 1 (reporting that petitioner immediately felt a shooting pain when she received a flu shot on September 15, 2015); Ex. 11 at 5 (reporting petitioner received a flu shot on September 15, 2015 and immediately developed a shooting pain in her left shoulder).

Medical records generally "warrant consideration as trustworthy evidence." *Cucuras v. HHS,* 993 F.2d 1525, 1528 (Fed. Cir. 1993). However, greater weight is typically given to contemporaneous records. *Vergara v. HHS*, 08-882V, 2014 WL 2795491, *4 (Fed. Cl. Spec. Mstr. May 15, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recorded in later medical histories, affidavits, or trial testimony."). The weight afforded to contemporaneous records is due to the fact that they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras*, 993 F.2d at 1528. That is exactly the context in which the above-described medical records discussed the onset of petitioner's shoulder pain. Thus, the undersigned does not find a delay in treatment of several months to be dispositive in and of itself regarding

the question of onset in a SIRVA case such as this. Petitioner's recollection that her injury began immediately following her vaccination is evidenced from numerous treatment records. Additionally, there are no records reflecting intervening medical visits where petitioner failed to note her shoulder pain. That is, petitioner's recollection of onset was clearly documented (initially and many times subsequently) in the context of diagnosis and treatment "with proper treatment hanging in the balance." Thus, contrary to respondent's assertion, petitioner's claim is corroborated by contemporaneous treatment records.

Additionally, the undersigned finds petitioner's sworn statement explaining her pattern of treatment and reports to her physicians as reasonable and credible. *See, e.g., Stevens v. HHS*, 90-221V, 1990 WL 608693, *3 (Cl. Ct. Spec. Mstr. Dec. 21, 1990) (noting that clear cogent, and consistent testimony can overcome missing or contradictory medical records). Petitioner indicates that the injection was very painful when it was first administered, however she was told the pain would ultimately go away. Ex. 6 at 1.

Also significant is that petitioner's account is fully consistent with other affidavits submitted in this case, including those from Ms. Minneci, Mr. Shapiro, Mr. Moni, and Ms. Middlebrooks. In those four affidavits, petitioner's pain is described as beginning immediately after receiving her flu vaccination. Ex. 15 at 2; Ex. 16 at 2; Ex. 17 at 1-2; Ex. 18 at 2. In weighing medical records, "it must be recognized that the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance. Since medical records typically record only a fraction of all that occurs, the fact that reference to an event is omitted from the medical records may not be very significant." *Murphy v. HHS*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992); *cf. Cucuras*, 993 F.2d at 1528 (noting that "the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight."). In this case, the undersigned is persuaded that petitioner's much more detailed sworn statements are in harmony with the contemporaneous records and provides additional credible statements regarding her condition that are absent or omitted from the medical records, rather than contradicted by the medical records.

Respondent notes that the physical therapy records indicate the date of petitioner's injury was September 23, 2015. *See, e.g.*, Ex. 4 at 1, 35 (recording the injury date as "09/23/2015 New Injury"). This is contradicted by numerous other records and affidavits cited above. *See, e.g.,* Ex. 5 at 8 (recording the onset of petitioner's left shoulder pain as "immediately after flu vaccine…."); Ex. 16 (affidavits noting petitioner experienced pain immediately after flu vaccination). Further, petitioner addressed this discrepancy in her supplemental affidavit. Ex. 25. Petitioner stated that she is not aware of how the injury date was determined in the physical therapy records, and cannot account for this error.

Thus, petitioner's reports to her physicians and her much more detailed statements in her sworn affidavits corroborate one another. The undersigned finds that

petitioner's sworn statements and medical records work in tandem to provide preponderant evidence that her shoulder pain began within 48 hours of her September 15, 2015 flu vaccination.

### V.     Conclusion

Thus, the undersigned finds, based on the record as a whole, the onset of petitioner's injury was within 48 hours of her September 15, 2015 flu vaccination as alleged in the petition.

The parties are encouraged to consider an informal resolution of this claim. Petitioner shall file a joint status report by no later than March 1, 2019, updating the court on the status of the parties' settlement discussions.  The status report shall indicate how the parties intend to proceed in this case, and whether respondent intends to file an expert report.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master